UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Kristin H.,[1] <br><br> Plaintiff, <br><br> v. <br><br> Commissioner of the Social Security Administration, <br><br> Defendant. | C/A No. 9:24-cv-03172-JDA-MHC <br><br> **REPORT AND RECOMMENDATION** |

Plaintiff Kristin H. (Plaintiff) filed the Complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Administrative Law Judge's (ALJ's) final decision denying her claim for Disability Insurance Benefits (DIB) under the Social Security Act (Act). This case was referred to the undersigned for a report and recommendation pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). For the reasons that follow, the undersigned recommends that the ALJ's decision be reversed and remanded.

### I.    BACKGROUND[2]

Plaintiff applied for DIB on April 29, 2021, alleging disability beginning September 10, 2017. R.pp. 50–51, 67–68. Plaintiff's claim was denied initially and upon reconsideration, and Plaintiff then requested a hearing before an ALJ. R.pp. 50–82, 108–10. On January 12, 2023, Plaintiff, represented by counsel, and a vocational expert testified at a telephone hearing held before the ALJ. R.pp. 33–49. At the hearing, Plaintiff elected to amend her alleged onset date to

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, because of significant privacy concerns in social security cases, federal courts refer to claimants only by their first names and last initials.

[2] Citations to the record refer to the page numbers in the Social Security Administration Record. *See* ECF No. 10.

May 12, 2021. R.pp. 10, 36–37. The ALJ thereafter denied Plaintiff's claims in a decision issued on August 23, 2023, finding that Plaintiff was not disabled from the alleged date of onset through the date last insured. R.pp. 12–25. The Appeals Council denied Plaintiff's request for review on March 27, 2024. R.pp. 1–6. This appeal followed.

Because this Court writes primarily for the parties who are familiar with the facts, the Court dispenses with a lengthy recitation of the medical history from the relevant period. To the extent specific records or information are relevant to or at issue in this case, they are addressed within the Discussion section below.

## II.    APPLICABLE LAW

### A. Scope of Review

Jurisdiction of this Court is pursuant to 42 U.S.C. § 405(g). Under this section, judicial review of a final decision regarding disability benefits is limited to determining (1) whether the factual findings are supported by substantial evidence, and (2) whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002) (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)). Accordingly, a reviewing court must uphold the final decision when "an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 267 (4th Cir. 2017) (internal quotation marks omitted).

"Substantial evidence" is an evidentiary standard that is not high: it is "more than a mere scintilla" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). A reviewing court does not reweigh conflicts in evidence, make credibility determinations, or substitute its judgment for that of the ALJ. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). "Where conflicting evidence

allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." *Id.* (alteration in original) (internal quotation marks and citation omitted). However, this limited review does not mean the findings of an ALJ are to be mechanically accepted, as the "statutorily granted review contemplates more than an uncritical rubber stamping of the administrative action." *Howard v. Saul*, 408 F. Supp. 3d 721, 725–26 (D.S.C. 2019) (quoting *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969)).

### B. Social Security Disability Evaluation Process

To be considered "disabled" within the meaning of the Social Security Act, a claimant must show that she has an impairment or combination of impairments which prevent her from engaging in all substantial gainful activity for which she is qualified by her age, education, experience, and functional capacity, and which has lasted or could reasonably be expected to last for a continuous period of not less than twelve months. *See* 42 U.S.C. § 423. The Social Security Administration established a five-step sequential procedure to evaluate whether an individual is disabled for purposes of receiving benefits. *See* 20 C.F.R. § 404.1520; *see also Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015) (outlining the questions asked in the five-step procedure). The burden rests with the claimant to make the necessary showings at each of the first four steps to prove disability. *Mascio*, 780 F.3d at 634–35. If the claimant fails to carry her burden, she is found not disabled. *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017). If the claimant is successful at each of the first four steps, the burden shifts to the Commissioner at step five. *Id*.

At the first step, the ALJ must determine whether the claimant has engaged in substantial gainful activity since her alleged disability onset date. 20 C.F.R. § 404.1520(b). At step two, the ALJ determines whether the claimant has an impairment or combination of impairments that meet the regulations' severity and duration requirements. *Id.* § 404.1520(c). At step three, the ALJ

considers whether the severe impairment meets the criteria of an impairment listed in Appendix 1 of 20 C.F.R. part 404, subpart P (the "Listings") or is equal to a listed impairment. If so, the claimant is automatically eligible for benefits; if not, before moving on to step four, the ALJ assesses the claimant's residual functional capacity (RFC).³ *Id.* § 404.1520(d), (e); *Lewis*, 858 F.3d at 861.

At step four, the ALJ determines whether, despite the severe impairment, the claimant retains the RFC to perform her past relevant work. 20 C.F.R. § 404.1520(e), (f). If the ALJ finds the claimant capable of performing her past relevant work, she is not disabled. *Id.* § 404.1520(f). If the requirements to perform the claimant's past relevant work exceed her RFC, then the ALJ goes on to the final step.

At step five, the burden of proof shifts to the Social Security Administration to show that the claimant can perform other jobs existing in significant numbers in the national economy, considering the claimant's age, education, work experience, and RFC. *Id.* § 404.1520(g); *Mascio*, 780 F.3d at 634–35. Typically, the Commissioner offers this evidence through the testimony of a vocational expert answering hypotheticals that incorporate the claimant's limitations. *Mascio*, 780 F.3d at 635. "If the Commissioner meets her burden, the ALJ finds the claimant not disabled and denies the application for benefits." *Id*.

### III.     ADMINISTRATIVE FINDINGS

The ALJ employed the statutorily-required five-step sequential evaluation process to determine whether Plaintiff was disabled from September 10, 2017, through the date last insured of December 31, 2022. R.pp. 10–21. The ALJ found, in pertinent part:

---

³ The RFC is "the most the claimant can still do despite physical and mental limitations that affect her ability to work." *Mascio*, 780 F.3d at 635 (internal quotation marks and citations omitted).

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2022.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of September 10, 2017 or the amended alleged onset date of May 12, 2021 through her date last insured of December 31, 2022 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: Agoraphobia with Major depressive and General Anxiety Disorders with Substance Abuse Disorder in sustained remission (20 CFR 404.1520(c)). . . .

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). . . .

5. After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: that includes the ability to perform simple, routine and low stress tasks, defined as requiring occasional decision making, occasional changes in the work-setting and judgment on the job with no production quotas or fast paced work environments, and occasional interaction with other employees, the public and supervisors. . . .

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565). . . .

7. The claimant was . . . 42 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a). . . .

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from September 10, 2017, the alleged onset date, through December 31, 2022, the date last insured (20 CFR 404.1520(g)).

R.pp. 12–21.

## IV. DISCUSSION

Plaintiff argues that remand is warranted for two reasons. First, she argues the ALJ failed to properly evaluate the medical source opinions resulting in an RFC assessment that is not based on substantial evidence or logical explanation. ECF No. 12 at 16–27. Second, she argues the ALJ did not properly evaluate Plaintiff's subjective symptomology. *Id.* at 27–30. Upon review, the undersigned agrees that remand is warranted.

### A. Evaluation of Medical Source Opinions

Effective March 27, 2017, numerous social security regulations and social security rulings (SSRs)[4] were amended or superseded, making the new regulations applicable to claims filed on or after March 27, 2017. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 FR 5844-01, 2017 WL 168819 (Jan. 18, 2017), *corrected by* 82 Fed. Reg. 15132-01, 2017 WL 1105368 (Mar. 27, 2017). Because Plaintiff's claim for benefits was filed after March 27, 2017, the ALJ was required to evaluate the application under 20 C.F.R. §§ 404.1520c and 416.920c.

Under the new regulations, the ALJ is not to defer to or give any specific weight to medical opinions based on their source.[5] 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Rather, ALJs are

---

[4] Social Security Rulings, or "SSRs," are "interpretations by the Social Security Administration of the Social Security Act." *Pass v. Chater*, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995). They do not carry the force of law but are "binding on all components of the Social Security Administration," 20 C.F.R. § 402.35(b)(1), as well as on ALJs when they are adjudicating Social Security cases. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009).

[5] This effectively does away with the so called "Treating Physician Rule" under the provisions of 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2), whereby an ALJ was directed to give controlling weight to the opinion of a treating physician if it was well supported by medically-acceptable clinical and laboratory diagnostic techniques and was not inconsistent with the other substantial evidence of record. In addition, 20 C.F.R. §§ 404.1527(c)(5) and 416.927(c)(5) provided that ALJ's should "generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a medical source who is not a specialist."

6

instructed to consider and evaluate the persuasiveness of the opinion evidence by considering the following factors: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1520c(b), (c), 416.920c(b), (c). Supportability and consistency are the most important factors to consider, and an ALJ must explain how these factors are considered in the determination or decision. *See* 20 C.F.R. §§ 404.1520c(a), (b)(2), 416.920c(a), (b)(2). The ALJ may, but is not required to, explain how the other factors are considered.[6] 20 C.F.R. §§ 404.1520c(b)(2), (c), 416.920c(b)(2), (c).

In evaluating the supportability factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s),[7] the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1). "Supportability" denotes "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation." *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 5853, 2017 WL 168819 (Jan. 18, 2017); *see also* 20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1).

---

[6] This represents another significant departure from the requirements of 20 C.F.R. §§ 404.1527(c) and 416.927(c), whereby, if the ALJ declined to accord controlling weight to the treating physician's opinion, he was to weigh the medical opinions of record based on all of the following factors: (1) examining relationship; (2) treating relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors that tended to support or contradict the opinion.

[7] The new regulations define a "medical opinion" as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the abilities to perform the physical, mental, or other demands of work activity or to adapt to environmental conditions. 20 C.F.R. § 404.1513(a)(2). The new regulations also define a "prior administrative medical finding" as a "finding, other than the ultimate determination about whether [a claimant is] disabled, about a medical issue made by [the Social Security Administration's] Federal and State agency medical and psychological consultants at a prior level of review[.]" 20 C.F.R. § 404.1513(a)(5).

As for the consistency factor, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). In other words, "consistency" denotes "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." *Revisions to Rules*, 82 Fed. Reg. at 5853; *see also* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

Although these amended regulations do away with the idea of assigning "weight" to medical opinions, the ALJ's reasons for finding the opinion of a medical source unpersuasive still must be supported by substantial evidence. The United States Court of Appeals for the Fourth Circuit has repeatedly stated that "[a]n ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." *Lewis*, 858 F.3d at 869 (quoting *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010)); *see also Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 98 (4th Cir. 2020). Moreover, an ALJ continues to have an obligation to "include a narrative discussion describing how the evidence supports each conclusion." *Monroe v. Colvin*, 826 F.3d 176, 190 (4th Cir. 2016) (quoting *Mascio*, 780 F.3d at 636); *see also* SSR 96-8p, 1996 WL 374184 at *7 (S.S.A. July 2, 1996) ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."). Similarly, remand may be appropriate when the courts are left to guess at how the ALJ arrived at the conclusions and meaningful review is frustrated. *Mascio*, 780 F.3d 636–37. The ALJ must "build an accurate and logical bridge from the evidence to [her] conclusion." *Monroe*, 826 F.3d at 189 (citation omitted).

Here, Plaintiff argues the ALJ's persuasiveness analysis of the state agency opinions and the medical source opinions was erroneous and lacked support. Specifically, Plaintiff contends that "the ALJ failed to articulate consideration of the required 'supportability' factor[,] which looks at the extent to which objective evidence and supporting explanations underlie the opinion." ECF No. 12 at 18; *id.* at 24–26. Plaintiff also argues that the ALJ erred by failing to consider the consistency between the various medical source opinions when evaluating their persuasive value. *Id.* at 23–24 (specifically arguing that the ALJ "erred when she neglected to consider the consistency amongst the treating source opinions who all arrived at similar conclusions that Plaintiff suffers from significant and severe mental symptoms that would hinder her from performing even basic work activities" and that the ALJ failed to consider that state agency reviewers' opinions "conflicted with every other opinion in the record [regarding] the degree of limitation they assessed in social interactions and ability to sustain ordinary routine and regular attendance at work").

The ALJ discussed the medical opinions of three treating providers from Cerebral, where Plaintiff received therapy and medication management for depression, anxiety, and insomnia—Sarah Dunham, F.N.P.; counselor Eleece Dougherty; and Josue Nguefack, N.P. ECF No. R.pp. 16–18; *see* 322–25, 423–27, 441–44. She also discussed the medical opinion of Abrah Sprung, Ph.D., who performed a consultative psychiatric evaluation of Plaintiff on behalf of the Division of Disability Determination. R.pp. 18–19; *see* R.pp. 316–20. Finally, the ALJ discussed the psychiatric evaluations and mental residual functional capacity assessments of two state agency medical consultants. R.p. 19; *see* R.pp. 50–65, 67–82.

Regarding F.N.P. Dunham's opinion, the ALJ first summarized the opinion as follows:

> On October 18, 2021, Sarah Dunham, F.N.P., from Cerebral, opined that the claimant has none to mild limits in remembering locations and work-like

9

> procedures and an unknown ability to understand and remember one-to-two step and detailed instructions (Exhibit 4F). Nurse Dunham felt the claimant had an unknown ability with carrying out simple, one to two step and detailed instructions, maintaining attention and concentration for extended periods or sustaining an ordinary routine without supervision. The nurse felt the claimant had marked to extreme limits with completing a workday without interruptions from psychological symptoms. Nurse Dunham opined that the claimant had extreme limits maintaining a schedule and being punctual, working in coordination with or near others without being distracted by them, making simple work-related decisions, performing at a consistent pace without unreasonably lengthy or frequent breaks, interacting with the public, coworkers and maintaining socially appropriate behavior. The nurse felt the claimant had an unknown ability to perform most areas of adaptation, but extreme limits with traveling to unfamiliar places or using public transportation. Nurse Dunham felt the claimant would be off task 20% to 25% of the workday and absent more than four times a month because of her impairments or treatment.

R.p. 17. The ALJ then conducted the following persuasiveness analysis:

> I find the opinion unpersuasive and based upon a limited period of treatment of only five months at the time the opinion. The opinion is also inconsistent with treatment records from Cerebral, wherein the claimant appeared alert and oriented and routinely had an appropriate affect with eurythmic mood with intact memory and good attention and concentration and reported she was doing "fairly well" (Exhibit 5F, pages 6, 16, 25, 35, 40, 44, 54, 59, 64, 69, 74, 78 and 82).

R.p. 17.

As Plaintiff points out, although the ALJ expressly mentioned consistency, the ALJ does not expressly discuss supportability. The Commissioner does not deny that the ALJ did not expressly discuss supportability, but he argues that the ALJ sufficiently discussed the supportability factor when evaluating F.N.P. Dunham's opinion. ECF No. 12–13. The Commissioner notes that supportability looks inward and considers whether an opinion is supported by relevant objective medical evidence and the source's supporting explanation, and he contends that the ALJ cited F.N.P. Dunham's own treatment records showing various normal findings and that Plaintiff reported she was doing "fairly well." *Id.*

The undersigned agrees with the Commissioner that although the ALJ stated she found F.N.P. Dunham's to be "*inconsistent* with treatment records from Cerebral," R.p. 17 (emphasis

10

added), because almost all the Cerebral treatment records are F.N.P. Dunham's records, it appears that the ALJ actually may have been evaluating the supportability factor. *See* 20 C.F.R. § 404.1520c(c)(1) ("Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.").

Notably, however, the ALJ does not address any of the additional explanations that F.N.P. Dunham provided to support her opinion. For instance, F.N.P. Dunham noted Plaintiff's diagnoses of generalized anxiety, insomnia, and major depressive disorder, and she noted psychosocial factors including "social situational avoidance" and "long standing PTSD." R.p. 322. She identified the following signs and symptoms that support her diagnosis and assessment: depressed mood, persistent or generalized anxiety, feelings of guilt or worthlessness, decreased energy, social withdrawal or isolation, paranoia/suspiciousness, recurrent panic attacks, and insomnia. R.pp. 322–23. She also noted that Plaintiff "is withdrawn even during video visit, verbalizes fears and anxiety related to social interactions." R.p. 323. F.N.P. Dunham further explained that Plaintiff would be absent more than four times a month due to her anxiety, depression, and PTSD. R.p. 325. The ALJ did not acknowledge any of these statements, and there is no indication that the ALJ considered the "supporting explanations presented by [the] medical source." *See* 20 C.F.R. § 404.1520c(c)(1). Accordingly, the undersigned is left to guess whether the ALJ's use of "inconsistent" was actually intended to be an evaluation of supportability.

Likewise, although the ALJ used the term "inconsistent," it is not clear that the ALJ discussed the consistency factor when evaluating F.N.P. Dunham's opinion.[8] As explained above,

---

[8] The ALJ's finding that F.N.P. Dunham's opinion was "based upon a limited period of treatment

11

consistency is outward looking and considers "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." *Revisions to Rules*, 82 Fed. Reg. at 5853; *see* 20 C.F.R. § 404.1520c(c)(2). The regulations contemplate that an ALJ will consider other medical opinions in the record when analyzing the consistency factor. *See* 20 C.F.R. § 404.1520c(c)(2) ("The more consistent a medical opinion . . . is with the evidence from *other medical sources* and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." (emphasis added); 20 C.F.R. § 404.1502(d) ("Medical source means an individual who is licensed as a healthcare worker . . ."); 20 C.F.R. § 404.1513(a)(2) ("A medical opinion is a statement *from a medical source* about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions[.]" (emphasis added)); *Revisions to Rules*, 82 FR 5844-01 at 5854 ("Our final rules provide an appropriate framework to evaluate situations when multiple medical sources provide medical opinions that are not consistent.").

      The ALJ does not address, at all, the extent to which F.N.P. Dunham's opinion is consistent with the other medical source opinions in the record, notwithstanding that her opinion appears very consistent with the opinions of the other two treating providers and largely consistent with the opinion of the consultative examiner. For instance, all four of these medical sources opined that Plaintiff would have significant difficulty with regular attendance at work and completing a workday without interruptions. R.p. 322–23 (F.N.P. Dunham opining that Plaintiff had extreme

---

of only five months at the time the opinion" does not address the consistency factor. Rather, it addresses the third factor, which relates to the medical source's relationship with the claimant. 20 C.F.R. §§ 404.1520c(c)(3). Plaintiff argues that the ALJ's articulation of this factor as a reason for finding F.N.P. Dunham's opinion unpersuasive for being based on a "limited period of treatment" is contradictory with the ALJ's finding persuasive the opinions of the two state agency reviewers, who never treated or examined Plaintiff. ECF No. 14 at 6.

limits maintaining a schedule and being punctual and would be off task 20–15% of the workday and absent more than four times a month because of her impairments or treatment); R.p. 443–44 (Ms. Dougherty opining that Plaintiff would have extreme limits maintaining a schedule and being punctual and would be off task 25% or more of a typical workday and absent more than four times a month because of her impairments or treatment); R.p. 425–26 (N.P. Nguefack opining that Plaintiff had extreme limits maintaining a schedule and being punctual and would be off task 20–15% of the workday and absent more than four times a month because of her impairments or treatment); R.p. 319 (consultative examiner Dr. Sprung opining that Plaintiff has "marked limitation in ability to sustain ordinary routine and regular attendance at work. Difficulties are caused by psychiatric problems. The results of the examination appear to be consistent with psychiatric problems, and this may significantly interfere with the claimant's ability to function on a daily basis.").

Moreover, although the ALJ cites two medical visits from providers other than F.N.P. Dunham, the undersigned agrees with Plaintiff that much of the information in these records appears to be consistent with F.N.P. Dunham's opinions. The first visit, from an initial phone session with JoAnn Benn on November 21, 2022, notes that Plaintiff reported difficulty falling and staying asleep, tossing and turning throughout the night, and frequent waking, despite medication, as well as daily panic attacks where she "goes into a ball [and] everything blurs out." R.p. 355. Although Plaintiff's mental status examination resulted in normal findings, R.p. 360, Ms. Benn diagnosed Plaintiff with major depressive disorder, recurrent, moderate; panic disorder (episodic paroxysmal anxiety); generalized anxiety disorder; and insomnia, unspecified, R.p. 362. The second record, from a phone session with Dr. Ghulam Waris on November 23, 2022 (two days after the session with Ms. Benn), indicates mixed results on the mental status exam, with an

"anxious" mood, "preservation" thought content, and "agitated" and "tearful" behavior. R.p. 370. These records appear consistent with the explanations F.N.P. Dunham provided in support of her opinions, which, as discussed above, the ALJ did not address. *See, e.g.*, R.p. 322–23 (describing Plaintiff as "withdrawn even during video visit" and noting Plaintiff's depressed mood, persistent or generalized anxiety, social withdrawal, recurrent panic attacks, and insomnia).

The ALJ's persuasiveness evaluation of F.N.P. Dunham's opinion falls short of providing the narrative discussion necessary for it to be subject to meaningful review. *See Monroe*, 826 F.3d at 191 (noting the ALJ's failure to include a narrative discussion describing how the evidence supports each conclusion precluded meaningful review where the ALJ gave conclusory analysis of medical opinions and did not adequately *explain* his reasoning). Because the ALJ failed to articulate how she considered both required factors, the ALJ failed to "build an accurate and logical bridge" from the evidence to her conclusions, leaving the undersigned to guess at what the ALJ meant by "inconsistent" and why she found F.N.P. Dunham's opinion unpersuasive. *See id.* at 189.

Review of the ALJ's discussion of the two prior administrative medical findings and of the opinions from Ms. Dougherty and N.P. Nguefack similarly reveals a failure to discuss the required factors. "Section 404.1520c plainly imposes an articulation requirement on ALJs reviewing medical opinions. Not only must an ALJ consider the five factors set forth in the regulation, the ALJ must—at a minimum—explain his or her consideration of the supportability and consistency factors." *Garrett v. Kijakazi*, No. 1:21-CV-00046-GCM, 2022 WL 1651454, at *2–3 (W.D.N.C. May 24, 2022). However, in discussing the persuasiveness of the medical source opinions from Cerebral providers Ms. Dougherty and N.P. Nguefack, the ALJ mentions only the consistency factor and fails to mention the supportability factor:

> I find the opinion [of Ms. Dougherty] unpersuasive and based upon a relatively limited period of treatment and that the opinion is generally *inconsistent* with

14

> treatment records from Cerebral, where mental status exams were unremarkable and the claimant appeared alert and oriented and regularly had an appropriate affect with eurythmic mood with intact memory and good attention and concentration and reported she was doing "fairly well" (Exhibit 5F, pages 6, 16, 25, 35, 40, 44, 54, 59, 64, 69, 74, 78 and 82).

R.p. 18 (emphasis added).

> I find the opinion [of N.P. Nguefack] unpersuasive and *inconsistent* with treatment records from Cerebral, that included unremarkable mental status exams where the claimant regularly appeared alert and oriented and repeatedly displayed an appropriate affect with eurythmic mood with intact memory and good attention and concentration and reported she was doing "fairly well" (Exhibit 5F, pages 6, 16, 25, 35, 40, 44, 54, 59, 64, 69, 74, 78 and 82).

R.p. 18 (emphasis). These explanations are largely identical to the explanation given for F.N.P. Dunham, and they cite the exact same records from Cerebral, where all three providers worked. It is not clear, based on the discussions, whether the ALJ's analysis is addressing the supportability factor (since these records are from Cerebral), as it seems she was doing in her discussion of F.N.P. Dunham's opinion, or whether she is addressing the consistency factor (since neither Ms. Dougherty nor N.P. Nguefack was a treating provider in the cited records).[9] What is clear, however, is that the ALJ addressed only one of the two factors she must discuss in evaluating these

---

[9] Although not discussed by the ALJ, each treating source provided some support within the body of their opinions. *See* R.pp. 322–23 (F.N.P. Dunham identifying signs and symptoms and documenting clinical observations in support of her opinion); 441–42 (Ms. Dougherty identifying signs and symptoms in support of her opinion); 423–24 (N.P. Nguefack identifying signs and symptoms in support of opinion). The supportability factor includes consideration of the medical source's supporting explanation. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 5853, 2017 WL 168819 (Jan. 18, 2017); *see also* 20 C.F.R. § 404.1520c(c)(1). The Commissioner suggests that the ALJ likely disregarded these additional supporting statements because they "re-iterated Plaintiff's self-reports, symptoms, and diagnoses." *See* ECF No. 13 at 13. However, the ALJ's decision contains no such discussion, and this Court "cannot accept post-hoc rationalizations not contained within the ALJ's decision." *Hilton v. Astrue*, No. CA 6:10-2012-CMC, 2011 WL 5869704, at *4 (D.S.C. Nov. 21, 2011); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings *offered by the ALJ*—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." (first emphasis added)).

opinions.

Similarly, the ALJ's brief discussion of the prior administrative medical findings addresses only the consistency factor and fails to articulate any analysis of the supportability factor:

> State Agency Medical Consultants prepared psychiatric evaluations and provided mental residual functional capacity assessments of the claimant finding mild to moderate nonexertional mental limitations (Exhibits 1A and 3A). The Medical Consultant opinions are persuasive and *consistent* with the medical record as a whole, including mental health treatment records that include symptoms of anxiety and depression with social anxiety and limits in concentration, but unremarkable mental status exams and reports that symptoms were well managed (Exhibit 5F).

R.p. 19 (emphasis added). Plaintiff argues that the failure to articulate the required supportability factor is particularly problematic here because the "only evidence the reviewers considered were two visits from a primary care office that pre-date the amended alleged onset date and the consultative examination," and they did not consider any evidence from Cerebral or the opinions of the Cerebral providers. ECF No. 12 at 26.

"Supportability and consistency are the most important factors for consideration, and the ALJ is required to explain how she considered the supportability and consistency factors in evaluating opinion evidence." *Finlayson v. Kijakazi*, No. 4:22-CV-03998-TER, 2023 WL 7384410, at *6 (D.S.C. Nov. 8, 2023) (citing 20 C.F.R. § 404.1520c(a), (b)(2)). Here, the ALJ's failure to articulate the required regulatory explanation regarding the supportability factor—particularly in light of the limited evidence before the reviewers, almost all of which pre-dated the amended alleged onset date—frustrates the court's ability to conduct a meaningful review of her persuasiveness findings. *See id.*

The ALJ's persuasiveness evaluation of the three treating provider's opinions and the state agency reviewers' findings falls short of providing the narrative discussion necessary for it to be subject to meaningful review. *See Monroe*, 826 F.3d at 190–91 (noting the ALJ's failure to include a narrative discussion describing how the evidence supports each conclusion precluded meaningful

review where the ALJ gave conclusory analysis of medical opinions and did not adequately *explain* his reasoning); *see generally Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 663 (4th Cir. 2017) (noting the "all too common" problem of ALJs failing to show their work when evaluating claims for social security disability benefits). Accordingly, the undersigned finds that remand for further administrative review is warranted.[10] *See Finlayson*, 2023 WL 7384410, at *6 (remanding case where it was "unclear what evidence the ALJ . . . found was supportive of the nonexamining opinions in order to find them persuasive; further, the ALJ did not discuss the consistency factor at all"); *Garrett*, 2022 WL 1651454, at *2–3 ("Quite clearly, the ALJ's analysis engages with the consistency factor, but nowhere does the ALJ discuss supportability. Because the ALJ was required to articulate how he considered the supportability factor, he did not apply the correct legal standard in resolving [plaintiff's] claims. . . . Remand is therefore necessary."); *Stanley v. Kijakazi*, No. CV 5:20-3030-RMG, 2021 WL 5768650, at *3–4 (D.S.C. Dec. 6, 2021) (remanding case where ALJ failed to explicitly assess the consistency and supportability of certain medical opinions).

### B. Remaining Allegations of Error

Because the undersigned has determined that the errors in the ALJ's persuasiveness evaluation of the treating provider's opinions and the state agency reviewers' findings warrant

---

[10] Plaintiff requests that this action be remanded to the Commissioner for an award of benefits or, in the alternative, be remanded so that proper legal standards may be applied. ECF No. 12 at 30–31. "Whether to reverse and remand for an award of benefit or remand for a new hearing rests within the sound discretion of the district court." *Smith v. Astrue*, No. 10-66-HMH-JRM, 2011 WL 846833, at *3 (D.S.C. Mar. 7, 2011) (citing *Edwards v. Bowen*, 672 F. Supp. 230, 237 (E.D.N.C. 1987)); *see also Evans v. Heckler*, 734 F.2d 1012, 1015 (4th Cir. 1984). Remand, rather than reversal, is required when the ALJ fails to explain her reasoning and there is ambivalence in the medical record, precluding a court from "meaningful review." *Radford v. Colvin*, 734 F.3d 288, 296 (4th Cir. 2013). In light of the undersigned's finding that the ALJ's lack of explanation precluded meaningful appellate review, the undersigned finds that remand for further proceedings, rather than outright reversal, is appropriate in this case. *See id.*

17

remand, the undersigned declines to further address the remaining claims of error. Upon remand, however, the ALJ should take such claims of error into consideration. With respect to any remaining claims of error, the ALJ will be able to reconsider and re-evaluate the evidence in toto as part of the reconsideration. *See Hancock v. Barnhart*, 206 F. Supp. 2d 757, 763 n.3 (W.D. Va. 2002) (noting the ALJ's prior decision has no preclusive effect, as it is vacated, and the new hearing is conducted de novo).

## V.     CONCLUSION

It is **RECOMMENDED** that the decision of the Commissioner be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative review.

The parties are referred to the Notice Page attached hereto.

_____
Molly H. Cherry
United States Magistrate Judge

July 8, 2025
Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).